**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **KAREN RALEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2:09-cv-154-TFM** |
| **vs.** | ) | **[wo]** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*., Karen Raley ("Raley") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g) , 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court REMANDS this case to the Commissioner.

### I.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited. The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find

the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Raley, age 44 at the time of the hearing, has an Associate Degree in Drafting and Design.  Raley alleges that she became disabled on February 17, 2005, due to carpal

tunnel syndrome in both hands and nerve damage in her right hand.[1] Raley acquired

sufficient quarters of coverage to remain insured through June 30, 2009, and therefore

must establish disability on or before that date in order to be entitled to a period of

disability benefits.[2]  Raley described her past work as technical support personnel for

computers, which involved constant use of computer keyboards.  She also described her

course of surgery on both hands for carpal tunnel and follow-up pain treatments.  Raley

testified that "most anything" involving the use of her fingers caused pain and was

difficult.  Raley acknowledged that her pain physician had not given her any kind of work

restrictions.[3]

Dr. Stephen Samuelson's treatment notes on Raley from November, 2004 to

January, 2007 (Exhibit 6F) are included in the record.[4]  Limitations imposed by Dr.

Samuelson in February 2005 included repetitive handling or fingering, but were lifted in

September 2005.  In November 2005 Raley was instructed to avoid activities that cause

pain, and in April 2006 Dr. Samuelson suspected exacerbation of her left tennis elbow

due to tenderness and pain.  The record contains a functional capacity evaluation (FCE)

performed in February 2005 (Exhibit 8F) which restricted Raley as follows:  maximum

frequent lift of 30 pounds; maximum frequent carry of 30 to 35 pounds for short

distances; no limitation in climbing/reaching; unable to handle (including seizing,

holding, grasping, and turning) continuously or repetitively with the right or left upper

extremity, limited to frequent for right and left upper extremity, and not continuous;

---

[1] R. at 95.
[2] R. at 10.
[3] R. at 27.
[4] R. at 192-200.

fingering (including picking, pinching, or otherwise working with the fingers primarily) cannot be performed repetitively and continuously.[5]   A written report summarizing the FCE results  (Exhibit 9F) is included in the record.[6]   Another FCE was performed in January, 2006 by Dr. Donald Brobst.[7]   Dr. Brobst incorporated the limitations of the earlier FCE, but did not otherwise limit Raley's ability to work.[8]

A vocational expert (VE) testified at Raley's administrative hearing.   The ALJ described a hypothetical person with Raley's age, education, and vocational history who is capable of the full range of light work.   The VE testified that this person could perform Raley's past work.   The ALJ then added limitations listed in the 2005 FCE, which the VE stated would not preclude Raley's past work.   The VE also testified that the limitations from Dr. Samuelson's 2005-2006 treatment notes would not prevent Raley's return to her former work.[9]   The ALJ asked the VE to list jobs within the ability of a person with the limitations listed in Exhibits 9F and 6F.   The VE stated that such a person could work as a receptionist or cashier.

The ALJ determined Raley is severely impaired by bilateral carpal tunnel syndrome with bilateral surgical release, but that her impairment does not meet or equal in severity any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4.[10] The ALJ found that Raley's allegations of pain and functional limitations were not credible based on his review of her medical records and the 2006 opinion from Dr.

---

[5] R. at 229-241.
[6] R. at 245-47.
[7] R. at 212-22.
[8] R. at 15.
[9] R. at 33.
[10] R. at 12, 13.

Donald Brobst. The ALJ found Dr. Brobst's report to be well reasoned, assigned it determinative weight, and adopted the finding that Raley is capable of performing work activity on a sustained basis.[11]  The ALJ found that the objective medical evidence shows Raley "has experienced pain and limitations as the result of bilateral carpal tunnel syndrome which preclude her former work; however, the evidence does not support [her] allegations that she has been precluded from sustained work activity at all exertional levels because of these impairments." [12]

After finding Raley cannot perform her past work, the ALJ determined she has the residual functional capacity (RFC) to perform a wide range of light work.[13]  The RFC statement restricts Raley from performing "repetitive and constant fingering activities such as in keyboard operation, picking, or otherwise working with the fingers primarily."[14]  The ALJ applied the medical-vocational guidelines promulgated by the Commissioner, stating that Raley's RFC for the full range of light work, in combination with her age, education, and work experience, is "not disabled" under Medical-Vocational Rule 202.21.  The ALJ also relied on the VE's testimony in listing receptionist and cashier as within Raley's RFC.[15]  The ALJ decision concluded with a formal statement that Raley is not disabled, as defined in the Act.[16]

---

[11] R. at 15.
[12] R. at 17.
[13] R. at 13.
[14] R. at 14.
[15] R. at 18.
[16] R. at 18.  The ALJ's disability analysis followed the  five-step sequential evaluation process set forth in 20 C.F.R. §404.1520  and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

### III.  ISSUES

Raley raises two issues for this judicial review:

1.      The ALJ erred by failing to include her non-exertional limitations.

2.      The ALJ committed various other errors which warrant reversal.

### IV.  DISCUSSION

**The ALJ decision lacks the support of substantial evidence as to Raley's ability to perform the occupations identified by the VE, and the Medical-Vocational Guidelines are inapplicable, given the ALJ's factual findings.**

Raley argues the ALJ's RFC determination failed to include pain and numbness as non-exertional impairments.  She argues the omission led the ALJ to pose an incomplete hypothetical to the vocational expert, and the VE's testimony was therefore unreliable. Hence, Raley argues, the VE's testimony that she can work as a cashier or receptionist is not supported by substantial evidence because the hypothetical question did not include all of her impairments.  *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n.7 (11th Cir. 2004) (citing *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999).

The  Commissioner  responds  the  RFC  determination  correctly  incorporated Raley's limitations as determined by the ALJ, and the jobs of receptionist or cashier do not exceed her RFC.  The Commissioner argues that these jobs are within the RFC limitations of no more than frequent use of upper extremities, and repetitive and constant fingering.  The Commissioner cites the Dictionary of Occupational Titles (DOT) to

support his findings by explaining that frequent means 1/3 to 2/3 of the time and constant means 2/3 of the time or more.[17]

The RFC set out by the ALJ limits Raley to frequent use of her upper extremities for handling activities, and restricts her from "repetitive and constant fingering activities such as in keyboard operation, picking, pinching, *or otherwise working with the fingers primarily*." The Court has reviewed the DOT sections cited for each occupation. The DOT explains that receptionists operate telephone consoles, type documents, and perform a variety of clerical duties pertinent to the type of establishment. *See* DOT #237.367-038. Cashiers' duties include the use of adding machines or cash registers, making change, issuing receipts/tickets, or operating ticket-dispensing machines. *See* DOT #211.462-010. Neither entry specifies the frequency of the activities listed therein, and the Court assumes the tasks, which all involve the use of one's fingers, are not incidental to the jobs, but would be performed repeatedly through the majority of the workday.

The Commissioner's response assumes Raley would not exceed the "constant" limit of upper extremity use, nor the "repetitive and constant" limit of finger use in either occupation. He does not, however, address how these occupations cannot be considered "working with the fingers primarily." Without some evidence to support the argument the ALJ's decision is not supported by substantial evidence. The record does not "include such relevant evidence as a reasonable person would accept as adequate to support the conclusion" that these occupations are suited to the RFC. *Foote v. Chater*, 67 F.3d at 1560. Notwithstanding the VE's testimony that his responses were consistent

---

[17] Def. Br. at 6.

with DOT standards, the Court finds the record does not show how these occupations are consistent with the ALJ's determination that Raley is prohibited from engaging in occupations requiring substantial use of her fingers.  The Court requires additional information as to whether work as a receptionist or cashier is truly within the RFC's limits regarding Raley's ability to use her fingers.

The ALJ's determination of non-disability rested on alternate grounds, as he used the medical-vocational guidelines to determine Raley is "not disabled."  Where an ALJ considers a claimant like Raley who cannot return to her past work, the final stage of the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 requires consideration of the claimant's "RFC, age, education, and work experience to determine whether the claimant 'can make an adjustment to other work.'"  *Phillips* makes clear that there are "two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy - the Medical Vocational Guidelines ("Grids"), or through a vocational expert ("VE").  *Phillips,* 357 F.3d at 1239-40.  "However, 'exclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills.'" *Id.* at 1242 (emphasis in original).

Under *Phillips*, therefore, an ALJ's finding that a claimant can perform a full range of work at a given level of work would, in most instances, satisfy the first prong of the *Phillips* test.  *Id*.  Here, however, the ALJ's discussion indicates that Raley cannot

perform a full range of light work, but is limited to a wide range.[18]  The decision does not explain how a claimant who can perform a wide range of work is then determined "not disabled" under a method reserved for those who can perform a full range.  While these adjectives are similar, the Eleventh Circuit has distinguished between them, and that difference must be acknowledged by this Court .  *See Phillips, id.* at 1243, n.14 (noting cases "blurring the line between . . . a full range or unlimited types of work and wide range or significantly limiting basic work skills. . . ."); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), quoting *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) ("it is only when the claimant can clearly do *unlimited* types of light work, . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.") (emphasis in original.)  Therefore, the Court cannot assume identical meanings for purposes of the medical-vocational grids.  A "wide" range is not the same as "full," or "unlimited," and reliance on the grids is not permitted for a claimant who is not capable of a full range of work in a given category.

The Court's review of the ALJ decision indicates an inconsistency between the VE's testimony and the ALJ's RFC.  Further, reliance on the medical-vocational grids is inappropriate pursuant to the ALJ's factual findings. *Phillips, id.* at 1242.  Where one aspect of an ALJ's determination is not supported by substantial evidence, a court need not reach the other issues raised by plaintiff.  *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).  Due to the Court's finding that work as either a receptionist or cashier requires primarily working with one's fingers, and the inapplicability of the medical-

---

[18] R. at 13.

vocational guidelines in this case, the Court remands this case to the ALJ to fully develop the record to demonstrate the occupations Raley can still perform do not require her to "work with the fingers primarily."

## V.  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the case should be remanded for further development of the record and compliance with applicable law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED.**   A separate judgment is entered herewith.

DONE this 27th day of April, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE